FIRST NATIONAL BANK OF WAUKON, IOWA, Appellant, v. JAMES L. HOARD, AARON HOARD and JEMIMA HOARD.

**Fraudulent conveyances:** HUSBAND AND WIFE: EVIDENCE. Where the wife at the time of her marriage turned over to her husband a sum of money from her separate estate, which he had thereafter repeatedly promised to repay, and in performance of this promise procured the title to land which he acquired to be taken in her name, she having no knowledge at the time that her husband was indebted to others in any considerable amount, the conveyance to her was not as a matter of law fraudulent as to the husband's creditors.

**Same:** STATUTES. The provision of the Code of 1860 requiring the wife to file a notice of any claim she had against her husband as to her property under his control, and to have the same recorded as a mortgage, had relation to personal property only, and in no manner affected the validity of a conveyance of real estate by the husband to the wife to satisfy her claim for money loaned.

*Appeal from Allamakee District.*—HON. A. N. HOBSON, Judge.

THURSDAY, JUNE 3, 1909.

SUIT to recover on promissory notes executed by the defendants J. L. & Aaron Hoard, and to subject real estate, the legal title of which is in Jemima Hoard, to the payment of the judgments obtained on the notes. The case was transferred to equity, and there was a judgment for the plaintiff on two of the notes sued upon, and a judgment in favor of the defendant Jemima Hoard. The plaintiff appeals.—*Affirmed.*

*D. J. Murphy,* for appellant.

*Wm. S. Hart* and *Stilwell & Stilwell,* for appellee Jemima Hoard.

SHERWIN, J.—The defendants James L. Hoard and Aaron Hoard jointly executed two promissory notes to the plaintiff, one in December, 1899, and one in March, 1901, and in 1902 the defendant Aaron Hoard executed his individual note to the plaintiff. At the time these notes were given James L. Hoard had title to a farm of three hundred and twenty-one acres in Allamakee County, the value of which was $12,000 or $13,000, and it was heavily incumbered. In 1904 Charles C. Deal, who was the husband of Maggie Deal, a daughter of James L. and Jemima Hoard, was the owner of a farm of about two hundred acres in the same county. This farm was of the value of $6,000, and was at the time incumbered by a mortgage of $800. In February of 1904 James L. Hoard and Aaron Hoard were largely indebted to Charles C. Deal, and for the purpose of paying off such indebtedness an exchange of property was made, and James L. and Jemima Hoard conveyed the Hoard farm to Deal, and Deal and his wife conveyed the Deal farm to Jemima Hoard. The plaintiff brought this action in March, 1904, declaring upon two promissory notes executed jointly by James L. and Aaron Hoard, and upon one promissory note executed by Aaron

Hoard alone. Jemima Hoard was made a party defendant, and the petition alleged that, while she held the legal title to the farm that had been conveyed by Deal and his wife to her, the conveyance had been made to her for the purpose of hindering and delaying the plaintiff and other creditors of James L. Hoard, and that it was fraudulent as to such creditors, and that James L. Hoard was the equitable owner thereof. After the issues had been settled, the plaintiff withdrew the count of its petition declaring upon the individual note of Aaron Hoard; and, when judgment was finally rendered for the plaintiff, it was upon the notes jointly executed by the two Hoards. The case was transferred to equity upon the motion of the defendant Jemima Hoard, and answers were filed by each of the defendants, alleging, among other things, a misjoinder of parties defendant and a misjoinder of causes of action. The case was tried in equity, on the claim against Jemima L. Hoard that the conveyance of the land in question to her was fraudulent, and a judgment was rendered in her favor.

Questions of practice are presented in this case which we do not deem it necessary to determine. It is the claim of the appellee Jemima Hoard that there was at least a misjoinder of causes of action; that an action to set aside the conveyance to her, and to subject the property to the payment of the plaintiff's judgment against her husband and Aaron Hoard, could not be maintained, until the plaintiff's claim had been reduced to judgment; but, as we have heretofore said, we shall not at this time determine this question of practice, for the reason that we think the judgment as to Jemima Hoard right on the merits of the case.

At the time this action was brought, the defendants James L. Hoard and Jemima Hoard were husband and wife, and each was over seventy years of age. Aaron Hoard was their son, and at that time he was a single

man about fifty years old.  James L. and Jemima Hoard

1. FRAUDULENT CONVEYANCES: husband and wife: evidence. were married a great many years ago in West Virginia.  At the time of her marriage Mrs. Hoard was an orphan, and what property she then had was in charge of a guardian in Pennsylvania.  The record shows, with practically no contradiction, that Mrs. Hoard inherited from her father somewhere in the neighborhood of $2,000, and that some years thereafter she received other legacies, aggregating somewhere in the neighborhood of $200 or $300.  She was married before she attained her majority, and before she had a settlement with her guardian.  Before her marriage, and before the settlement with her guardian, James L. Hoard borrowed of the guardian $1,000, giving his personal note therefor, with his father as security thereon. After the marriage she had a settlement with her guardian, and received from him the further sum of $800, which money she testifies, and no one contradicts it, she also let her husband, James L. Hoard, have.  The evidence conclusively shows also that the subsequent legacies received by her were also given to her husband, and that altogether he received from her money amounting to about $2,000, and it is fairly conclusive that all of this money was so received by him prior to 1860.  It is conclusively shown that this money was delivered to her husband as a loan, and not as a gift, that for many years prior to the commencement of this action, and before the land in question was deeded to Mrs. Hoard, she had made repeated demands for the repayment of the money he had received from her, and that he had as often faithfully promised that she should have it.  When the affairs of James L. Hoard became so involved that it was apparent that he could no longer retain the home farm, and that an exchange of properties with Deal was the only way that he could pay his indebtedness to Deal, Mrs. Hoard flatly refused to join in any conveyance unless the farm, which was to

be received from Deal, was deeded to her in satisfaction of her demand against her husband, and such arrangement was acceded to by James L. Hoard, and the conveyance was thus made.

There was an attempt on the part of the plaintiff to show, by the examination of Mrs. Hoard, that she took the title to the Deal farm for the purpose of assisting her husband in defeating the claims of his creditors; but, when the evidence is carefully analyzed, we think no such conclusion can be drawn therefrom. There are, it is true, expressions here and there in the testimony of Mrs. Hoard which, considered alone, give color to this claim of the appellant. But the fact appears without serious contradiction that her purpose was merely to secure money which she then, and for many years prior thereto, had been claiming, and that at the time of the transfer she did not know that her husband was indebted to the plaintiff, or to creditors other than Deal, in any substantial amount.

The appellant says that, at the time the alleged loan was made by Mrs. Hoard to her husband, the statute of this state required the wife to file a notice of any claim 2. SAME: statutes. she had against her husband as to any of her property under his control, and have the same recorded as a mortgage against her husband's property. There is manifestly nothing in this position, because sections 1447 and 1448 of the Code of 1851, and sections 2499 and 2500 of the Revised Code of 1860, relate solely to personal property, and of course have no bearing upon the question before us.

We reach the conclusion that this judgment should be *affirmed,* and it is so ordered.